[Crim. No. 6545. Second Dist., Div. One. Feb. 3, 1960.]

THE PEOPLE, Respondent, v. CHARLES A. RICH, Appellant.

Charles A. Rich, in pro. per., for Appellant.

Stanley Mosk, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

LILLIE, J.—Defendant was charged with burglary of a market (Count I), kidnaping of Maude McDougall (Count II) and Euldene Hughes (Count III) in violation of section 207, Penal Code, assault with a deadly weapon upon Ronald

Guilmett (Count IV), and kidnaping of Ivry Glamore (Count V); and with three prior felony convictions, which he admitted. A jury found him guilty as charged and the burglary to be second degree. The trial court denied his motion for a new trial and sentenced him to the state prison. Inasmuch as defendant has not specified the matters from which he appeals, we will treat his appeal as one from both the judgment of conviction and order denying his motion for new trial.

In his opening brief appellant is without concern for his conviction of burglary and assault with a deadly weapon under Counts I and IV; concedes he is bound by the jury's finding that it was he who committed the acts complained of; and relates his claim of insufficiency of the evidence to sustain the conviction to only the offenses of kidnaping charged in Counts II, III and V, restricting the same to the issue that there was no affirmative showing that the victims "were forced to travel anywhere other than where they were specifically intending to proceed at the time of the alleged unlawful transportation." This position can be sustained under neither the law of this state nor the evidence in the record before us.

Assuming, in support of the judgment of conviction, every fact which the jury could have reasonably deduced from the evidence (*People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778]), the record discloses a burglary of a market, a subsequent chain of events resulting in the kidnaping of three persons and an assault upon another with a deadly weapon.

At approximately 2 p.m. a checker at the Boys' Market saw defendant, wearing a green smock similar to those worn by store employees, attempting to depart with a box of cigarettes. When he failed to respond to her order to stop, the manager, Mr. Fulton, confronted him and took the box; a tussle ensued and while he called for assistance, defendant left the store. Pursued by several employees, defendant ran into the street where he was struck to the ground by a panel truck driven by Ivry Glamore, jumped to his feet, waved his arms and stopped a Chevrolet driven by Euldene Hughes in which Maude McDougall was riding. He clung to the window of the left door and said to Mrs. Hughes: "(d)rive, lady, drive, or I will kill you; I will cut you to ribbons." Told to get off, he repeated "(d)rive or I will kill you." When she asked where she was to drive, defendant answered: "(c)atch that truck. As she drove, he hoisted himself through the window onto the back seat and pressed a knife on the

back of her neck saying "(d)rive, lady, drive, or I will cut your throat." When she demurred "but there is a red light up there," he ordered "(g)o through it; go through it or I will kill you." She did so and, approaching another intersection, again said "(t)here is a red light up there," to which he responded "(d)rive through it or I will kill you. Step on the gas." Ronald Guilmett, driving a Mercury in which a store employee was riding, pursued Mrs. Hughes' car for 12 blocks and finally pulled in front of her forcing her to stop suddenly. The force threw the front seat and its occupants forward and the defendant from the rear causing him to strike his forehead on the dashboard. He scrambled out of the car and ran to the rear where the panel truck driven by Ivry Glamore had stopped. Guilmett tried to stop him from getting into the truck and combat ensued, during which defendant threw his knife blade at Guilmett's arm. He then ordered Glamore to move over, making "motions like he had" a knife in his hand, took the wheel of the truck and drove off. He turned around, making "some swinging motion" and ordered Glamore to get back up on some of the boxes in the rear of his truck. Glamore climbed over the seat into the back, and seeing the door of the vehicle open, jumped out after riding 10 or 12 blocks. Guilmett picked up Glamore in the Mercury and pursued defendant, who, after driving for 45 minutes, stopped, ran from the truck and disappeared around a house. A green smock similar to the one worn by him in the market lay on a fence nearby. The men watched the premises until police came and arrested defendant who was found crouching behind a refrigerator in a shack.

Defendant denied he was the man involved or was in the shack when arrested; testified that it was a case of mistaken identity and that he was arrested on a public street; and offered alibi testimony.

Appellant argues that the People failed to prove that any of the victims were forced to travel anywhere other than where they intended to go, and that "an essential element of kidnaping is actual transportation of the party beyond the scope of the area in which the victim had himself intended to travel voluntarily." Although asserting that this rule is "implicit" in the decisions of this state, he concedes that it is as yet "unspoken by the courts," and cites no authority in support of his position.

We find nothing either express or implicit in the law, statutory or otherwise, requiring an affirmative showing

that the actual movement of the victim was beyond the scope of the area in which he intended to travel voluntarily prior to his forcible transportation, before the crime of simple kidnaping can be made out—on the contrary, it is apparent that only forcible movement is necessary. Under section 207, Penal Code, a person is guilty of kidnaping if he forcibly takes any person in this state and carries him outside the county, or to another part of the same county. In construing this section, the decisions in California, relying principally upon *People* v. *Chessman,* 38 Cal.2d 166, 192 [238 P.2d 1001], clearly establish that "it is the fact, not the distance, of forcible removal which constitutes kidnaping in this state"; and in a simple kidnaping under section 207 only forcible taking and carrying is necessary (*People* v. *Cluchey,* 142 Cal.App.2d 563 [298 P.2d 633] ; *People* v. *Loignon,* 160 Cal.App.2d 412 [325 P.2d 541] ; *People* v. *Phillips,* 173 Cal. App.2d 349 [343 P.2d 270]), without regard for distance, route taken, or area covered.

 That the two women (Counts II and III) were forced by defendant to drive him until stopped by a pursuing car, is obvious from his threats to kill the driver, cut her throat and cut her to ribbons, while pressing his knife to the back of her neck; and that Glamore (Count V), was forced to surrender the wheel of his truck to the defendant and ride with him until his escape, is borne out by the menacing and "swinging" motions he made "like he had" a knife in his hand. As to the removal or movement required—the conduct of defendant was far beyond mere detention (*People* v. *Wein,* 50 Cal.2d 383 [326 P.2d 457] ; *People* v. *Chessman,* 38 Cal.2d 166 [238 P.2d 1001]), involving transportation of the women 12 blocks under his order and direction; and of Glamore, 10 or 12 blocks by him, and his removal from the front to the back of the truck upon defendant's order.

Appellant concedes that he can cite no authority directly on the issue he has raised, but relies upon two cases, *People* v. *Carrigan,* 126 Cal.App.2d 128 [271 P.2d 519] and *People* v. *Mendoza,* 122 Cal.App.2d 185 [264 P.2d 223], to point up that "it is implicit in the decisions that to constitute kidnaping something more is required than mere transportation along a path that the victim intended to follow." A careful reading of these cases reflects nothing of the kind. Further, in both, there was not only no showing that the victims did not intend to travel in the direction in which they were forced, but there was an obvious deviation from the intended route.

Not justified by statute or court decision, neither is appellant's position based on any practical consideration, for where one under threat of death is coerced into driving at the direction, and on the order, of the person commandeering the vehicle, what difference should it make what the victim had in mind or intended to do, or where he otherwise intended to go, if all the other elements of the crime are present?

In any event, the evidence clearly reveals removal or movement beyond that which the three victims intended, and that they were forcibly carried by defendant beyond the scope they would otherwise have gone. It is undisputed that in her own automobile, in which Mrs. McDougall was a passenger, Mrs. Hughes was forced at the point of a knife with threats of death to "drive" and "catch that truck"; and did drive approximately 12 blocks during which she was ordered to proceed through two intersections against the red traffic signal. From this the jury could fairly and reasonably infer that against their will the two women were transported, at least once, across an intersection against a red traffic signal which, had not defendant been present, they would have obeyed by stopping and traversing the intersection only when legally free to do so. Inasmuch as the conduct of the defendant in that particular amounted to more than mere detention of the two women, the distance they were carried across the intersection is not material (*People* v. *Wein,* 50 Cal.2d 383 [326 P.2d 457]; *People* v. *Chessman,* 38 Cal.2d 166 [238 P.2d 1001]). Supported by the evidence, too, is the inference that Mrs. Hughes, prior to becoming involved with the defendant, did not intend to "catch that truck" or any other vehicle; that she did not intend to "step on the gas" while going through an intersection, especially against a red traffic signal; that she did not intend during the 12 blocks she traveled to assume the speed at which she drove; and that she did not intend to stop her vehicle so abruptly as to throw the occupants forward. And finally, no affirmative showing was made that the two women originally intended to drive the distance and route they were forced to go.

The forced removal of Ivry Glamore (Count V) is revealed in three separate movements at the hand of defendant—his removal from behind the wheel of his truck to allow defendant to drive, upon defendant's order and threatening motion; his passing from the front to the back of his truck upon defendant's order and "swinging motion"; and his transportation by defendant in the back of the truck 10 or 12 blocks,

before he was able to escape. Here again the victim was forced to make two separate and distinct movements which he obviously would not have made had not defendant ordered him, under threat, to do so; nor does it seem reasonable Glamore ever intended to ride the 12 blocks with defendant behind the wheel of his truck, on top of boxes in the back of the vehicle with the rear door open, regardless of direction. And as in Counts II and III, there was no affirmative showing that Glamore originally intended to travel the 10 or 12 blocks he was driven by defendant, or in the direction, at the time, on the route and in the manner he was forced to go.

Referring now to appellant's supplementary opening brief filed by him in propria persona, it appears that he was represented by a deputy public defender at all times before the trial court; that upon appellant's request this court on January 14, 1959, appointed David Daar to represent him and he filed appellant's opening brief June 8, 1959; and that at appellant's request he was relieved as court appointed counsel on June 23, 1959, and appellant was given 30 days in which to file a supplemental opening brief in his own behalf. After numerous continuances, appellant made application for augmentation of the record to include the prosecution's opening and closing arguments to the jury and all the instructions, which this court denied. In the meantime, respondent filed its reply brief and after a further extension of time appellant, in propria persona, filed his supplementary opening brief. Besides urging this court's error in denying his application to augment the record, appellant "submits the contentions in which he would rely upon if this court were to have granted him the right to augment the record on appeal," to wit: (1) in connection with Counts I and IV, there was a "total absense (sic) of evidence to warrant any degree of burglary" and the People did not produce the knife or prove Guilmett was "touched"; (2) the verdict was contrary to the evidence in that his identity was not established and only simple assault was proved; (3) the verdict is contrary to the law; (4) "the trial court erred in failing to properly instruct the jury on the facts of the case; and (5) he was denied competent and/or effective aid of counsel."

Although appellant claims he is prejudiced because the record does not include the People's opening and closing arguments to the jury and the instructions, a consideration of his assignments of error reveals that the arguments and instructions are neither necessary nor material to the points urged on

his appeal; and that nothing other than the record before us, which includes the clerk's transcript and the reporter's transcript of the actual trial containing testimony, the return of the jury verdict, argument on the motion for new trial, denial of probation and sentence, is needed to decide the merit of each claim of error advanced in his supplementary opening brief. Obviously appellant has not been prejudiced by the denial of his application to augment the record, for it is clear there was nothing to prevent his counsel on this appeal, had he believed them to be meritorious, from fully presenting the same points in his opening brief; or to prevent appellant from properly presenting them now in his supplementary opening brief, the addition of the arguments to the jury and the instructions making his position no more effective.

The points raised by appellant before this court would have been better directed to the trier of fact. The jury has determined that the evidence admits no tenable theory of innocence. This determination is based upon evidentiary findings of fact which the verdict implies, and those findings have ample support in the evidence and in the reasonable inferences therefrom, and are conclusive on appeal. (*People* v. *Benford,* 53 Cal.2d 1 [345 P.2d 928].) At the outset, and without again reviewing the evidence, it unquestionably discloses that a burglary of the second degree was committed as charged in Count I, and that it was appellant who committed the offense. That the jury rejected his alibi and disbelieved defense witnesses is not a point appellant can properly argue on appeal, and this court will not disturb its determination (*People* v. *Williams,* 53 Cal.2d 299 [347 P.2d 665]). The jury's finding that he committed an assault with a deadly weapon on Guilmett is wholly justified in the light of the evidence that after pressing his knife against the back of her neck and threatening to kill Mrs. Hughes, cut her throat and cut her to ribbons, appellant in a physical struggle with Guilmett to enter Glamore's truck, threw his "knife blade at (Guilmett), at (his) arm." Relative to his assertion that he was not identified as the perpetrator of the crimes, particularly the burglary, no plausible conclusion of mistaken identity could be drawn from the evidence, for it reveals that from the time Mrs. Ogawa, the checker, first saw him in the market and he took flight, through an unbroken sequence of events, to the time he disappeared in the vicinity in which he was arrested, defendant was continuously in the sight of numerous witnesses, who so testified. In any event,

identity is a question of fact for the jury, the determination of which is binding on appeal. (*People* v. *Hightower*, 40 Cal. App.2d 102 [104 P.2d 378]; *People* v. *Williams*, 53 Cal.2d 299 [347 P.2d 665].)

██ A review of the proceedings before the lower court, including the argument on his motion for new trial, discloses nothing to support appellant's claim that he was denied competent and/or effective aid of counsel. The evidence against defendant was abundant, clear and precise; and the public defender, burdened with an alibi defense, gave the best representation he could afford him under the circumstances. Appellant made no complaint of counsel until after the direct examination of Mrs. Ogawa who testified to the theft of the cigarettes in the market and the flight of the thief. Believing his counsel should have proceeded differently in the cross-examination of this witness, appellant asked the court for a change of counsel, however adding "but, he (the public defender) knows more about the law than I do." The request was denied. The record reveals his counsel's active participation throughout the trial in the protection of appellant's rights and in the advancement of his defense. Appellant's chief complaint stems from the manner in which the public defender moved for a new trial. Counsel felt there was no merit to such a motion and plainly stated that he saw no error in the record, a view with which we are inclined to agree. And when defendant said he did not feel the public defender "did his best in fighting (his) case for (him)," the trial judge very properly pointed out that having been required to rely on an alibi defense the public defender was limited in any effort to impeach the prosecution witnesses concerning what took place —for defendant claimed he had not been present.

██ His remaining contention that the trial court erred in failing to give proper instructions to the jury is wholly unsupported by the record before us and any recitation in his brief—of what instructions were given, offered and refused, on what points of law the jury was not adequately instructed, and what facts were not covered by proper instructions. In addition, he has failed to point out in either his application to augment the record or his supplementary opening brief in what way the trial court failed to properly instruct the jury on the law of the case and what other instructions should have been given. This lack of information well justifies this court's refusal to grant the application in the first instance, and pre-

cludes any present inquiry into the merit of his claim of error based upon inadequate instructions.

Appellant's only direct statement in this connection occurs, and then but vaguely, when he asserts under his last point, that *his counsel* failed to have instructions given to the jury relative to alibi and corpus delicti. However, this was directed solely to his argument that because of this he was deprived of effective aid of counsel, not to any error on the part of the trial court. But again, in the absence of any showing in the record relative to the instructions offered by defense counsel to the trial court, we are unable to pursue the matter further.

For the foregoing reasons the judgment and order denying the motion for new trial are and each is affirmed.

Wood, P. J., and Fourt, J., concurred.