[No. B034392. Second Dist., Div. Three. May 25, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DEXTER WAYNE WILLIAMS, Defendant and Appellant.

COUNSEL

Fern M. Laethem, State Public Defender, under appointment by the Court of Appeal, and Albert C. Cardenas, Deputy State Public Defender, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Edward T. Fogel, Jr., Assistant Attorney General, Robert F. Katz and Mark Alan Hart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

POUNDERS, J.*—Following trial by jury, defendant Dexter Williams was convicted of two counts of kidnaping in violation of Penal Code section 207, subdivision (a).[1] A separate trial on the allegations of prior convictions resulted in a "true" finding for two prior serious felony convictions in violation of Penal Code section 667, subdivision (a), one within the meaning of section 667.5, subdivision (b) and one within the meaning of section 1203, subdivision (e). He was sentenced to state prison for a total term of nineteen years eight months, which included five years each for the section 667, subdivision (a) convictions.

Defendant's appeal from the judgment advances three contentions: (1) the court improperly denied his request to represent himself; (2) the evidence of kidnaping was insufficient to sustain a conviction; and, (3) he was improperly sentenced for two prior serious felony convictions because they were not brought and tried separately. Finding merit only in the third contention, we affirm the convictions, vacate the sentence, and remand for resentencing only.

FACTUAL AND PROCEDURAL BACKGROUND

On January 30, 1987, at approximately 8:45 p.m., Jane Walker and her sister-in-law, Dana Walker, were returning from a 15-minute visit to a video

---

\* Assigned by the Chairperson of the Judicial Council.

[1] All references hereafter are to the Penal Code unless otherwise stated.

store at 3976 Atlantic Boulevard in Long Beach. The street was divided with two lanes, parking spaces, and a bike lane on each side. Dana was driving her 1986 red Toyota pickup truck as they made a U-turn. Near the end of the turn, defendant Dexter Williams (hereafter Williams) grabbed their shoulders from the back of the truck and said, "This is a cop. You are under arrest. I have a gun . . . keep driving and don't get out of the truck."

Dana drove to the end of the block, where there was a car in front of them. She slammed on her brakes three times, jumped out of the truck, and told Jane to get out. Williams, however, told Jane not to move. The truck collided with the car, throwing Williams around in the back and allowing Jane to escape. She jumped out because the number of the people in the area made her feel somewhat safe. She ran across the street to get away but was pursued by Williams, who told her to get back into the truck. She told him not to shoot or take anything from her. She was afraid for her life.

Dana was in the middle of the street in front of her truck. The driver of the car was yelling at her. Although Williams caught up with Jane, he ran into an alley to get away from the three or four people in the area. Later that evening, both women identified Williams, who was in police custody.

### Defendant's Contentions

(1) The trial court erred in denying defendant's timely request to represent himself.

(2) The evidence was insufficient to support a conviction for kidnaping.

(3) Not being brought and tried separately, one of the two enhancements for a prior serious felony conviction under Penal Code section 667, subdivision (a) must be reversed.

### Discussion

1. *Defendant's request to represent himself was neither timely nor unequivocal but in fact was made for the purpose of delay.*

 Relying on *Faretta* v. *California* (1975) 422 U.S. 806 [45 L.Ed.2d 562, 95 S.Ct. 2525], defendant asserts that he had an absolute right to represent himself in propria persona. The People respond that, as the trial court found, the request was untimely and without a genuine desire to proceed in propria persona. A brief examination of the record reveals that defendant was improperly attempting to "juggle his constitutional rights in an attempt to evade prosecution." (*People* v. *Floyd* (1970) 1 Cal.3d 694, 707

[83 Cal.Rptr. 608, 464 P.2d 64], overruled on another point, *People* v. *Wheeler* (1978) 22 Cal.3d 258, 287, fn. 36 [148 Cal.Rptr. 890, 583 P.2d 748]; *Teerlink* v. *Municipal Court* (1972) 25 Cal.App.3d 1138, 1143 [102 Cal.Rptr. 505].)

Defendant was arraigned on June 12, 1987. On June 16 he was granted in propria persona status when his retained counsel from the preliminary hearing informed the court that he would not be representing defendant in the superior court. On August 14, 1987, defendant stated that he would not be ready for trial by the 60th day. The prosecutor indicated a strenuous objection to a continuance beyond September 11 plus 10 days. Following two more continuances at defendant's request, the matter was sent out for trial on October 16, 1987. Three days later the matter was continued for appointment of counsel. On December 4, 1987, the trial was continued on defense motion for further preparation.

On January 20, 1988, defendant's trial counsel was relieved for medical reasons and new counsel was appointed. The court noted the anniversary date of the offense and the need to get the matter resolved. On the date set for trial, defendant made a motion under *People* v. *Marsden* (1970) 2 Cal.3d 118, 124 [84 Cal.Rptr. 156, 465 P.2d 44], for substitution of appointed counsel, stating, "I have previously indicated to the court *my interest in appointing an attorney of my choice.*" (Italics added.) Defendant, of course, had no such right. (*People* v. *Easley* (1988) 46 Cal.3d 712, 732 [250 Cal.Rptr. 855, 759 P.2d 490].)

Upon denial of the motion, defendant said that he was "forced to go pro per." The request was denied, the court indicating, "I'm not altogether clear whether or not you are asking pro per status today. But if you are, Court finds that it's untimely."

On February 5, 1988, the court entertained another *Marsden* hearing based on defendant's lack of confidence in trial counsel. Upon denial of the motion, defendant stated that he was drafting a civil suit for legal malpractice against his trial counsel. The court responded to defendant's "adoption" of *Faretta* by stating: "Well, the Court's made a finding in the past and makes it again, that any request to represent yourself at this stage of the proceeding is simply a delay or request to seek a delay of the ordinary process of justice."

On February 8, 1988, jury selection began. Defendant again made a request to proceed in propria persona while first making a request for a continuance and then saying, "Your Honor, if it means to proceed under these conditions without a further continuance I would adopt *Faretta* and

proceed in pro per, Your Honor." Shortly thereafter, defendant created a disturbance in the courtroom. ▆ Disruptive behavior is a valid ground for terminating propria persona status. (*Faretta* v. *California*, *supra*, 422 U.S. at pp. 834-835, fn. 46 [45 L.Ed.2d at pp. 581-582].) Here, however, we are unable to determine whether the disturbance was either significant or in response to the court's ruling.

▆ Nevertheless, it is immediately apparent that defendant was able to delay the trial date for eight months by juggling his *Faretta* rights with his right to counsel interspersed with *Marsden* motions. He first asserted his right to represent himself and did so until the case was sent out for trial. He then persisted in an attempt to select counsel of his choice. His meritless *Marsden* motions and his civil suit against appointed trial counsel were devised to delay proceedings and allow personal selection of appointed counsel.

Contrary to his assertion on appeal, he never made a timely and unequivocal request to represent himself after abandoning propria persona status when the case was sent out for trial. He was playing "the *Faretta* game": "His request was at best equivocal and hardly an unqualified waiver since he only wanted to represent himself if the court would not give him another attorney. As we indicated, it was pretty obvious that this defendant was simply playing games with the court . . . ." (*People* v. *Lopez* (1981) 116 Cal.App.3d 882, 889-890 [172 Cal.Rptr. 374].)

Both timeliness and an unequivocal assertion are necessary to invoke *Faretta* rights. (*People* v. *Windham* (1977) 19 Cal.3d 121, 127-128 [137 Cal.Rptr. 8, 560 P.2d 1187]; *People* v. *Ruiz* (1983) 142 Cal.App.3d 780, 790 [191 Cal.Rptr. 249].) Being " ' . . . for the *purpose* of delaying his scheduled trial or to obstruct the orderly administration of justice,' . . . ." defendant's request to represent himself was properly denied. (See *People* v. *Moore* (1988) 47 Cal.3d 63, 78-81 [252 Cal.Rptr. 494, 762 P.2d 1218]; *People* v. *Burton* (1989) 48 Cal.3d 843, 852 [258 Cal.Rptr. 184, 771 P.2d 1270].)[2]

2. *There was sufficient evidence to support convictions for kidnaping.*

Defendant initially challenges the evidence as being insufficient to establish movement "for a substantial distance." ▆ As *People* v. *Stanworth* (1974) 11 Cal.3d 588, 600-601 [114 Cal.Rptr. 250, 522 P.2d 1058] makes clear, the rule requiring movement not merely incidental to associated

---

[2] The federal rule in this district also recognizes that a request to proceed in propria persona is "timely if made before the jury is empaneled, unless it is shown to be a tactic to secure delay." (*Fritz* v. *Spalding* (9th Cir. 1982) 682 F.2d 782, 784.)

crimes and a substantial increase in the risk of harm for section 209 kidnaping does not apply to section 207 simple kidnaping. What is required is a "substantial movement" of the victim which is more than slight or trivial. (*Id.*, at p. 601.)

There is no "bright line" test for simple kidnaping. (*People* v. *Sheldon* (1989) 48 Cal.3d 935, 953 [258 Cal.Rptr. 242, 771 P.2d 1330].) We take guidance from *People* v. *Stender* (1975) 47 Cal.App.3d 413, 421-423 [121 Cal.Rptr. 334], which held that some distances, standing alone, cannot be determined to be either trivial or substantial. The *Stender* court viewed the distance of movement in context with the purpose served, the locations involved, the boundaries traversed, and the nonexistence of an underlying crime to conclude that walking 200 feet was a substantial movement. (*Id.*, at p. 423.) While this analysis has been criticized in part (*People* v. *Caudillo* (1978) 21 Cal.3d 562, 574 [146 Cal.Rptr. 859, 580 P.2d 274]), it is apparent that consideration may be given to the locations and boundaries traversed. (See *People* v. *Stanworth, supra,* 11 Cal.3d at p. 604.)

It cannot be said here that the movement of the two women for more than an eight hundred forty-foot long block under these conditions was slight or trivial. This was a major street in a large town. The late hour of the evening offered the victims several last desperate chances for escape. In fact, Jane attempted to escape from defendant's hold only because of the change in location to an area where the number of people on the street made her feel somewhat safe.

The Court of Appeal in *People* v. *Salazar* (1980) 108 Cal.App.3d 992, 999 [167 Cal.Rptr. 38], recognized that the harm contemplated by the statute occurs at least as much when the victim is forced to do the driving as when the perpetrator drives. Indeed, the danger sought to be prevented was realized here. In fear of their lives, the driver of the pickup truck abandoned her vehicle in motion, causing it to collide with a car, which allowed the second victim to flee briefly with defendant in pursuit. Only the presence of three or four other people on the street prevented completion of defendant's plan. These facts support the jury's conclusion under appropriate instructions that the movement was substantial.

Defendant also argues that his threats were ineffectual to seize or control his victims, thus failing to establish kidnaping under the rationale of *People* v. *Martinez* (1984) 150 Cal.App.3d 579, 600 [198 Cal.Rptr. 565], which in part suggests that in a section 209 kidnaping threats and fear must be effectual to cause confinement. He asserts that the driver was already going in the direction she had chosen. This argument ignores the fact that control was actually achieved during the U-turn and continued until the

driver found an opportunity to abandon her vehicle in motion. Defendant's control was sufficient to avoid being ejected from the truck by the victims and to require the victims to remain with the vehicle despite an obvious desire to escape the man with the gun.

There was sufficient substantial evidence to support the two convictions for simple kidnaping in violation of section 207.

3. *The enhancements for two prior convictions for a serious felony were not brought separately.*

Defendant contends, and the People concede, that the two 5-year enhancements pursuant to section 667, subdivision (a) for armed robbery and kidnaping occurred on the same date and are thus insufficient for separate enhancements. Defendant is correct. The Supreme Court in *In re Harris* (1989) 49 Cal.3d 131, 136 [260 Cal.Rptr. 288, 775 P.2d 1056], held that "the underlying proceedings must have been formally distinct, from filing to adjudication of guilt." As in *Harris* the charges here were not brought separately but were made in a single complaint. The matter must be remanded for resentencing consistent with the *Harris* decision.[3]

## DISPOSITION

The judgment of conviction is affirmed. The sentence is vacated, and the matter is remanded for resentencing.

Danielson, Acting P. J., and Croskey J., concurred.

Appellant's petition for review by the Supreme Court was denied August 1, 1990.

---

[3] Defendant was sentenced to the high term of eight years in count I and a consecutive term of one year eight months on count II, for a total of nineteen years eight months with the ten years of enhancements. At the time of sentencing, the trial court dismissed in the interests of justice the enhancement under section 667.5, subdivision (b) found to be true by the jury.