[No. B070448. Second Dist., Div. Seven. Sept. 15, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
DEREK LINDSAY DANIELS, Defendant and Appellant.

**COUNSEL**

Harvey L. Goldhammer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, Kenneth C. Byrne and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS (Fred), J.**—A jury convicted appellant of kidnapping (Pen. Code,[1] § 207; count I; victim Melynda Moncrief), two counts of assault with a firearm (§ 245, subd. (a)(2); count II, victim Melisa Moncrief; count III, victim Penne Moncrief) and found true three firearm use (§ 12022.5) allegations. Three state prison prior felony allegations (§ 667.5) were bifurcated and admitted. Appellant was sentenced to 11 years in state prison (5 years on the kidnapping count).

Appellant contends: (1) the kidnapping conviction must be reversed because the victim directed her own asportation, (2) there is insufficient evidence of an assault with a firearm, and (3) the trial court committed instructional error regarding kidnapping.

We find merit only in appellant's third contention. We reverse the kidnapping conviction, affirm the assault convictions and firearm use allegations, and remand the matter to the trial court.

### FACTUAL BACKGROUND

Although appellant makes insufficiency of evidence claims, the claims are essentially legal not factual. Accordingly, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

---

[1] Statutory references, unless otherwise noted, are to the Penal Code.

Penne Moncrief lived in a small, rear house at 657 Palisade in Pasadena. Living there with her were her daughters Tiffany, Melynda (called Lyndy), and Melisa, as well as Melisa's children, two-year-old Neil and one-year-old Brianna. Penne Moncrief also permitted 17-year-old Terrel Oliver, not a family member, to sleep on the living room floor.

Appellant knew Terrel Oliver and Lyndy Moncrief.

On Monday, December 30, 1991, at about 6:30 p.m., appellant went to the Moncrief residence and asked if Terrel Oliver was there. Penne Moncrief said no and appellant left.

Appellant returned at about 7 p.m., entered the residence, asked "Where is Terrel?" and when informed he wasn't there, asked "Where is Lyndy?" Told she was in the bathroom, appellant went to the bathroom door and asked "Where is Terrel?" Lyndy said she didn't know.

Appellant then opened the bathroom door, grabbed Lyndy by her hair, pointed a gun to her head, and pulled her into the living room.

There were several people in the living room and appellant "rotated" the gun, pointing it at everyone, saying "Break, motherfuckers, break." Melisa Moncrief understood this command to mean get down on the floor. When appellant pointed the gun at one of Melisa's children she "jumped up from the couch." Appellant "threw" Lyndy on a chair and pushed Melisa against a window. He again grabbed Lyndy by the hair, said "Come on bitch, we are going to find him," and pulled her out the front door.

Appellant pulled Lyndy to an orange Volkswagen parked in the driveway. He pushed her onto the rear seat and sat in the front passenger seat. Anthony Woods,[2] whom Lyndy knew, was in the driver's seat.

Lyndy said Terrel might be at the liquor store and Anthony Woods drove there. Appellant threatened to kill Lyndy, kept the gun pointed at her, and struck her with his fist.

The liquor store was two blocks from the Moncrief residence. Anthony Woods stopped in front of it so appellant and Lyndy could see if Terrel was there, outside. He was not. Anthony Woods then drove around the corner, returned to the Moncrief residence, and parked some distance from it.

Appellant got out, told Lyndy and Anthony Woods to stay there, and walked toward the Moncrief residence. After a few minutes, still holding his

---

[2] A codefendant, charged with kidnapping, he was found not guilty.

gun, appellant returned to the car. He and Lyndy argued about whether Terrel was her brother. Lyndy denied it and said she would show him where Terrel's mother lived. She directed Anthony Woods to that house, about one-half block away. Anthony Woods parked, exited, went to the Terrel residence to look for Terrel, and—not finding him—reentered the car.

Pasadena police officers, who had been contacted by the Moncriefs, ordered appellant and Anthony Woods from the car, searched it, found the gun and ammunition under the front passenger seat, and arrested appellant and Anthony Woods.

Anthony Woods estimated the time from Lyndy first entering the car until arrest as 10, 15, or 20 minutes.

## DISCUSSION

1. *Appellant contends the kidnapping conviction must be reversed because the victim directed her own asportation.*

■ In what appellant characterizes as "an issue of first impression in California," appellant contends that section 207[3] is not violated when the "victim" controls her own asportation by telling her "abductor" where to drive her. Appellant is doubly mistaken: the issue is not one of first impression and the statute is violated.

Justice Lillie, 33 years ago, considered this identical issue in *People v. Rich* (1960) 177 Cal.App.2d 617 [2 Cal.Rptr. 600]. The appellant, pro se, urged reversal of his kidnapping conviction because the victims were not "forced to travel anywhere other than where they intended to go." (*Id.* at p. 620.) Justice Lillie, for a unanimous court, rejected the argument, stating "what difference should it make what the victim had in mind or intended to do, or where he otherwise intended to go, if all the other elements of the crime are present?" (*Id.* at p. 622.)

We are satisfied *People v. Rich* was correctly decided. (See *People v. Williams* (1990) 220 Cal.App.3d 1165, 1171 [269 Cal.Rptr. 705]. See also *People v. Salazar* (1980) 108 Cal.App.3d 992 [167 Cal.Rptr. 38].)

2. *Appellant contends there is insufficient evidence of an assault with a firearm.*

■ In reliance upon *People v. Rocha* (1971) 3 Cal.3d 893 [92 Cal.Rptr. 172, 479 P.2d 372], appellant argues that an assault is an unlawful *attempt* to

---

[3]In pertinent part the section provides: "Every person who forcibly . . . takes . . . any person . . . and carries the person . . . into another part of the same county, is guilty of kidnapping."

commit a battery and the evidence only showed that he pointed his gun at the victims not that he attempted to shoot them.

The argument is mistaken. "[A] threatened act may amount to an assault even though the threat is conditional or qualified." (1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) § 416, p. 477.)

Appellant pointed his gun at everyone in the Moncrief living room and told them "Break, motherfuckers, break." The jury could have reasonably construed this conduct as a conditional threat constituting an assault. (*People* v. *McMakin* (1857) 8 Cal. 547, 548; *People* v. *McCoy* (1944) 25 Cal.2d 177, 192 [153 P.2d 315]; *People* v. *Thompson* (1949) 93 Cal.App.2d 780, 782 [209 P.2d 819].)

3. *Appellant contends the trial court committed instructional error regarding kidnapping.*

The trial court instructed the jury that kidnapping requires moving another person by force or threat, without consent, and "the movement of such other person was for a substantial distance, that is, a distance more than slight or trivial." (CALJIC No. 9.50 (1991 rev.).)

Shortly after commencing their deliberations the jury made this written request of the trial court: "[N]eed clarification on what is substantial distance, that is, a distance more than slight or trivial."

In response, the trial court instructed the jury as follows: "You are to apply the ordinary and common meaning to those words, 'substantial,' 'slight,' and the word 'trivial.' Use the common ordinary meaning that one uses in life with regards to those words, and then determine if the distance involved in this car that is where Ms. Moncrief, Melynda Moncrief, the distance that she went from the house to the liquor store, to the other location, returned to the house, and the location of the arrest was slight or trivial or substantial. It is for you the jury to make that determination.

"You have to consider the total distance of the movement of that automobile."

The jury then requested a dictionary. The record does not disclose whether they were provided one.

If they were, it did not help. The next day they sent to the trial court this message: "It appears we have a hang-up with some people of the jury who

interpret kidnapping as taking a person a [ ] few miles in order for him (the defendant) to be charged with kidnapping. We need a clarification on what constitutes kidnapping. Does the distance the victim is taken (miles) and the nature of the route have any bearing on a person being kidnapped? It seems we are hung up on the interpretation of the word kidnapping."

Over appellant's objection, the trial court then stated to the jury: "I am going to instruct the jury [a]s a matter of law, 500 feet is substantial . . . . [¶][4] When I say substantial, I mean for the crime of kidnapping."

■ Appellant contends this last instruction constitutes prejudicial error because it removed from the jury's determination an element of the offense. Appellant is correct.

Apposite is our recent decision in *People* v. *Reyes Martinez* (1993) 14 Cal.App.4th 1412 [18 Cal.Rptr.2d 300]. There the kidnapping victim was driven 3 blocks or about 1,200 to 1,500 feet. The trial court instructed the jury: " 'If you find from the facts that the victim in this case was forcibly moved a distance of 500 feet or more, then this movement is sufficiently substantial to sustain a kidnapping conviction.' " (*Id.* at p. 1415.) We held this instruction equivalent to a mandatory presumption and reversed the kidnapping conviction. (*Id.* at p. 1418.)

The instant instruction is even more compelling. It flatly stated that ". . . as a matter of law 500 feet is [a] substantial [distance]." Clearly, it was this peremptory instruction which eliminated jury uncertainty and triggered a guilty verdict.

As we explained in *People* v. *Reyes Martinez*, movement of the victim for a substantial distance is a kidnapping element. (*People* v. *Stanworth* (1974) 11 Cal.3d 588, 601 [114 Cal.Rptr. 250, 522 P.2d 1058].) Being an element, the *jury* must decide (beyond a reasonable doubt) whether it has been proved. Appellate opinions do not make such decisions. They only decide whether a jury's determination is supported by substantial evidence. Thus *if* a jury determines a kidnapping has occurred by a victim having been moved one-half mile (*People* v. *Magana* (1991) 230 Cal.App.3d 1117, 1121 [281 Cal.Rptr. 338]) or 840 feet (*People* v. *Williams, supra,* 220 Cal.App.3d 1165) or 200 feet (*People* v. *Stender* (1975) 47 Cal.App.3d 413 [121 Cal.Rptr.

---

[4]The trial court relied on *People* v. *Blackburn* (1976) 56 Cal.App.3d 685 [128 Cal.Rptr. 864], a case involving the propriety of a kidnapping defendant being held to answer, *not* the propriety of a kidnapping jury instruction.

334]), appellate approval only means the jury *could* so find, not that it was required to so find.

Our Supreme Court has stated: "In many criminal cases, the prosecution's evidence will establish an element of the charged offense 'as a matter of law.' Similarly, in many instances, the accused will not seriously dispute a particular element of the offense. . . . However, neither of these sometime realities of trial practice justifies the giving of an instruction which takes an element from the jury and decides it adversely to the accused. Such an instruction confuses the roles of judge and jury." (*People* v. *Figueroa* (1986) 41 Cal.3d 714, 733 [224 Cal.Rptr. 719, 715 P.2d 680], internal citations omitted.)

In the event of a retrial, we offer the following guidance to the trial court should it be asked by the jury to clarify the definition of "substantial."[5]

The jury may be told: "The law does not provide an exact measure of 'substantial distance.' The issue is one of fact for you to decide, not one of law for the court to decide. Based upon the facts you determine from the evidence, you may decide the distance was substantial or that it was not substantial."

### DISPOSITION

The convictions of assault (counts II and III) and the firearm use findings are affirmed. The kidnapping conviction (count I) is reversed. The case is remanded to the superior court with directions to enter a conviction of felony false imprisonment (§§ 236, 237, 12022.5), a lesser included offense of kidnapping (*People* v. *Gibbs* (1970) 12 Cal.App.3d 526, 547 [90 Cal.Rptr. 866]), if the prosecution consents to forego retrying appellant for kidnapping (§ 1181, subd. (6)); or, in the alternative, to set the kidnapping charge for retrial if the prosecutor does not so consent.

---

[5] Jury confusion is understandable. Without a frame of reference, "substantial" has little or no meaning. To only say, as CALJIC No. 9.50 does, that it is "more than slight or trivial" scarcely helps. As one court has observed: "The increasing complexity of the law marches on. What *Stanworth* and *Brown* [*People* v. *Brown* (1974) 11 Cal.3d 784 (114 Cal.Rptr. 426, 523 P.2d 226)] seem to teach is this: the test of simple kidnaping *is not* . . . (1) whether the movement is incidental to an underlying crime (2) whether there is an increase in the risk of harm above that present in an underlying crime . . . (3) a mathematical formula . . . or (4) the crossing of arbitrary boundaries. . . . Thus we are left to ponder what the movement *is* in simple kidnaping. We are told it 'is the actual distance of the victim's movements' and they must be substantial in character . . . but, of course, it is not a question of mathematical measurement or crossing of arbitrary boundaries. Thus, we are led in circles." (*People* v. *Stender, supra,* 47 Cal.App.3d 413, 422; internal citations omitted, original italics.)

The sentence is vacated, and the matter remanded to the trial court for new sentencing proceedings consistent with the views expressed in this opinion.

Lillie, P. J., and Johnson, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 13, 1994.