[Nos. D017361, D017362, D017363. Fourth Dist., Div. One. Jan. 24, 1994.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH MANUEL GONZALES, Defendant and Appellant.

## COUNSEL

Jan Stiglitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert M. Foster and Gary W. Schons, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WORK, Acting P. J.**—Joseph Manuel Gonzales appeals a judgment convicting him of kidnapping for robbery (Pen. Code,[1] § 209, subd. (b)). He contends the trial court erred in instructing the jury by using a modified version of CALJIC No. 9.54 pertaining to kidnap for robbery, claiming the

---

[1]All statutory references are to the Penal Code.

modification amounted to a directed verdict on one element of the offense depriving him of his right to a jury determination. As we shall explain, we conclude the trial court's modification to CALJIC No. 9.54 eliminated an ambiguity and is consistent with Supreme Court precedent construing the necessary elements for the crime of kidnapping to commit robbery under section 209, subdivision (b). Accordingly, we affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND[2]

On March 24, 1992, at approximately 3:30 a.m., Mhyedin Hajibille, a Silver Cab Company driver, received a call to go to the 4400 block of Louisiana Street in North Park. Upon arriving, he saw two men, later identified as George Color and Gonzales. Color waved at Hajibille, who pulled up, and Color attempted to get into the front seat. Hajibille told him to ride in the back at which time Color and Gonzales got into the rear passenger seat. When Hajibille started to drive, he inquired of the passengers where they wanted to go. In response to Gonzales's statement "go straight," Hajibille advised them he needed a specific destination, at which time Gonzales told him he wanted to go to the 3800 block of University Avenue. Hajibille started to turn right on Monroe Street when Gonzales told him to go straight, causing Hajibille to respond he could get another cab if he did not like the way he was driving and Gonzales acquiesced. After they had reached 32d Street, Gonzales grabbed Hajibille around the neck with his left arm and put a knife to his right side. Although Hajibille could not see the knife at this point, he could feel it against his skin. Gonzales told him to drive straight and do as he was told, later telling him to make a left-hand turn onto Swift Street. Following Gonzales's directions, Hajibille eventually drove the cab onto Interstate 805 freeway in a northbound direction. Once on the freeway, Gonzales told Color to jump into the front seat. Upon doing so, Gonzales changed the position of the knife, moving it to Hajibille's chest and revealing it to him. At Gonzales's order, Color took approximately $65 to $70 from Hajibille's pocket.

At Gonzales's direction, Hajibille left the freeway at Mesa College Drive, circled over the freeway and then got back on the Interstate 805 freeway and

---

[2]The factual and procedural background presented here relates only to Gonzales's conviction of kidnapping for robbery. He and a codefendant were charged with one count of kidnapping for robbery (§ 209, subd. (b)) and two counts of robbery (§ 211). As to each count, it was alleged Gonzales used a deadly weapon (a knife) (§ 12022, subd. (b)) and that he had served a prior prison term (§ 667.5, subd. (b)) and had suffered serious prior felonies (§§ 667, subd. (a), 1192.7, subd. (c)(19)). At trial, the court granted his motion to sever counts 1 and 2 (kidnapping for robbery and robbery involving a single victim) from count 3 (a robbery involving a different victim). The court also granted his motion to bifurcate trial on the prior prison and conviction enhancements. By separate juries, he was convicted of both robbery counts and the accompanying weapon use allegations were found to be true. The court, sitting without a jury, found the prior prison enhancement allegation and the two prior serious felony enhancement allegations to be true.

proceeded southbound. All the while, Gonzales kept the knife on Hajibille, holding him by the neck. In response to Hajibille's inquiry why Gonzales was taking his money, he stated that he "want[ed] to get high." Again, at Gonzales's direction, Hajibille left the freeway at the Madison/Meade off ramp and proceeded on Madison back to Louisiana Street. Following Gonzales's directions, Hajibille then drove into an alley between Louisiana and Mississippi Streets and stopped the cab. Gonzales and Color then left the cab and demanded the key. Upon giving Gonzales the key, he was directed to get out of the cab and walk up the alley. When he did so, he heard the key hit the pavement and as he turned around saw Gonzales and Color running down the alley. He retrieved the key, went back to the cab and followed them. They ran toward a house, jumped a fence and went into a yard. He drove to Texas Street where he located a police officer, explained to him he had been robbed and led him back to Louisiana Street. Hajibille then directed the officer to the place where he last saw Gonzales and Color. When the officer looked behind the fence, he discovered Gonzales and Color in the process of changing their clothes and attempting to enter a residence. When Hajibille identified Gonzales and Color, the officer arrested them. Gonzales's clothing was retrieved from a nearby trash can along with a brown paper bag containing $62.28 in cash and change. Near the landing where Gonzales was standing, the officer recovered a folding Swiss Army knife with a broken red handle.

On June 23, 1992, a jury found Gonzales guilty of robbery in the first degree and found that he had used a dangerous weapon while committing the offense as alleged in one count, but it could not reach a verdict on the kidnapping for robbery count and a mistrial was declared. On retrial, a jury found him guilty and found the allegation he used a dangerous weapon to be true. On August 19, he was sentenced to a term of life imprisonment with the possibility of parole for the kidnapping for robbery, and the court imposed a one-year consecutive term based upon the weapon use enhancement.[3] On August 20, Gonzales timely filed his notice of appeal.

### THE MODIFIED VERSION OF THE KIDNAP-FOR-ROBBERY INSTRUCTION, CALJIC NO. 9.54, WAS PROPER

■ Gonzales's sole contention is that the trial court erred in modifying CALJIC No. 9.54 at the People's request and instructing the jury that

---

[3]The court sentenced consecutively the prior five-year sentence imposed for the unrelated robbery and the twelve years of weapon and prior crimes enhancements imposed earlier. Consequently, the court stayed imposition of the consecutive terms that had been previously imposed for the robbery in the first degree of Hajibille and the weapon enhancement which accompanied it.

"movements to facilitate the robbery that are for a substantial distance rather than brief are not incidental to the robbery." He contends the modification amounted to a directed verdict on the issue of whether the forced movement of the cab driver was not merely incidental to the commission of the robbery and thus deprived him of his right to have the jury resolve that issue. However, as we shall explain, we conclude the trial court's modification properly stated the law.

Over Gonzales's objection, the trial court gave the following modified version of CALJIC No. 9.54:

"Defendant is . . . accused in the information of having committed the crime of kidnapping to commit robbery, a violation of section 209(b) of the Penal Code.

"Every person who, with the specific intent to commit robbery, kidnaps any individual, is guilty of the crime of kidnapping to commit robbery, in violation of Penal Code section 209(b).

"The specific intent to commit robbery must be present when the kidnapping commences. Robbery is the taking of personal property in the possession of another, against the will and from the person or immediate presence of that person, accomplished by means of force or fear, and with the specific intent permanently to deprive such person of such property.

"Kidnapping is the unlawful compulsion of another person to move without that person's consent and because of a reasonable apprehension of harm[4] where such movement is not merely incidental to the commission of the robbery and where such movement substantially increases the risk of significant physical injuries to such person over and above those to which such person is normally exposed in the commission of the crime of robbery itself.

"In order to prove such crime, each of the following elements must be proved, and there's five elements: No. 1, a person was unlawfully compelled to move because of a reasonable apprehension of harm; 2, the movement of such person was caused with the specific intent to rob that person, and the person causing such movement had such specific intent to rob when the movement commenced; 3, the movement of such person was without that person's consent; 4, the movement of such person was *not merely incidental to the robbery*, that is it must have been for a substantial distance rather than a slight or trivial distance; and, 5, such movement substantially increased the

---

[4]The words "to move for a substantial distance" were omitted at this point.

risk of significant physical injuries to such person[ ] over and above those to which such person normally would have been exposed in the commission of [the] crime of robbery itself.

*"Brief or trivial movements to facilitate the robbery are incidental to the robbery and are insufficient to constitute the crime of kidnap for robbery. On the other hand, movements to facilitate the robbery that are for a substantial distance rather than brief are not incidental to the robbery."* (Italics added.)

In a thorough statement of decision, the court explained why it elected to modify CALJIC No. 9.54 on the authority of *People* v. *Daniels* (1969) 71 Cal.2d 1119, 1139 [80 Cal.Rptr. 897, 459 P.2d 225], and *In re Earley* (1975) 14 Cal.3d 122 [120 Cal.Rptr. 881, 534 P.2d 721]. It interpreted those decisions as holding one could be convicted of kidnapping for robbery (§ 209), and suffer the accompanying severe penalty where the movement involved is (1) not merely incidental to the robbery, and (2) it substantially increases the risk of harm beyond that inherent within the crime of robbery. (*In re Earley, supra,* 14 Cal.3d at pp. 127, 129.) Specifically addressing when the movement of the victim is merely incidental to the commission of a robbery, the *Earley* decision states: "Brief movements to facilitate either robbery or robbery and rape are incidental thereto within the meaning of *Daniels.* [Citations.] On the other hand movements to facilitate the foregoing crime or crimes that are for a substantial distance rather than brief are not incidental thereto within the meaning of *Daniels.* [Citations.]" (*In re Earley, supra,* 14 Cal.3d at pp. 129-130.) The superior court noted that not only did the Supreme Court in *Earley* declare the risk of harm test is satisfied when a victim is forced to travel a substantial distance under the threat of imminent injury by a deadly weapon (*id.* at p. 131), but also expressly rejected notions that "when the robber's intent is solely to facilitate the robbery the movement is merely incidental" and the "movement for a substantial distance (e.g., a mile) can be incidental to an underlying crime. . . ." (*Id.* at pp. 130-131, fns. 11, 12.)[5]

The trial court then explained that the existing language in CALJIC No. 9.54 "aids and abets" the confusion that resulted in the first jury deadlocking. The court explained:

"As is common in such instructions, it defines the crime twice, once in a narrative, and again a numbered list of elements. Unfortunately the two definitions are inconsistent and confusing on the issue of what makes a movement 'merely incidental' to the robbery.

"In the alternative fifth and sixth paragraphs CALJIC [No.] 9.54 addresses this test by requiring movement 'for a substantial distance where such

---

[5] See also *People* v. *Smith* (1992) 18 Cal.App.4th 1192 [24 Cal.Rptr.2d 587, 862 P.2d 148].

movement is not merely incidental to the commission of the robbery.' This language suggests two independent factors, requiring that the movement be both substantial and not merely incidental. It implies the possibility of substantial movement which is, nonetheless, merely incidental. This possibility has been rejected as a matter of law. (*Earley*[, *supra*, 14 Cal.3d] at 131, fn. 12.)

"In element number 4 of CALJIC [No.] 9.54, the second definition is stated in a way consistent with the holding in *Earley*. It requires the movement to be 'for a substantial distance, that is a distance more than slight or trivial.' Unfortunately, this definition is not parallel to the first one, thus adding to the confusion."

Relying on *People* v. *Reyes Martinez* (1993) 14 Cal.App.4th 1412, 1416-1417 [18 Cal.Rptr.2d 300], and *People* v. *Daniels* (1993) 18 Cal.App.4th 1046, 1051 [22 Cal.Rptr.2d 877], Gonzales asserts the trial court withdrew the issue of whether the movement of Hajibille was merely incidental to the robbery when it modified CALJIC No. 9.54 and instructed the jury that "movements to facilitate the robbery that are for a substantial distance rather than brief are not incidental to the robbery." However, Gonzales is mistaken. First, the modification correctly eliminates the inference contained in CALJIC No. 9.54 that a substantial movement may be incidental to the robbery, an inference the Supreme Court rejected in *In re Earley*, *supra*, 14 Cal.3d at pages 130-131, footnote 12. In other words, the modified language correctly advised jurors that as a matter of law forced movement for a substantial distance cannot be incidental to the robbery.

In comparison, the modified language did not do that which was condemned in *People* v. *Reyes Martinez*, *supra*, 14 Cal.App.4th 1412, and *People* v. *Daniels*, *supra*, 18 Cal.App.4th 1046, that is to relate a legal element to the evidence at trial thereby creating an impermissible mandatory presumption. The jury was not told to presume or even infer the People's evidence had proven either that the movement was for substantial distance or that the movement was not merely incidental. The modified instruction simply related the two legal elements to each other in the abstract. Although perhaps mandated by the evidence, the jury was still required to independently determine whether Hajibille had been moved a substantial distance. (Gonzales never contended the movement was not substantial.) If the jury found such movement was not merely incidental to the robbery it then had to determine whether the movement substantially increased the risk of significant injuries. Accordingly, Gonzales was not deprived of his right to have the jury factually determine whether the legal elements of kidnapping for robbery had been established nor was it directed to draw any presumption or inference from the evidence it had heard.

Although unnecessary, we note that even if the modification was error, the error was harmless beyond a reasonable doubt. ■ For, the standard of review for instructional error which gives rise to a mandatory presumption on an element of the offense is whether the error was harmless beyond a reasonable doubt. (*Rose* v. *Clark* (1986) 478 U.S. 570, 577 [92 L.Ed.2d 460, 470, 106 S.Ct. 3101]; *People* v. *Hedgecock* (1990) 51 Cal.3d 395, 410 [272 Cal.Rptr. 803, 795 P.2d 1260]; *People* v. *Reyes Martinez, supra*, 14 Cal.App.4th at pp. 418-419.) In its statement of decision, the trial court pertinently stated:

"In .this case, there can be little doubt whether defendant's movement of the victim was 'merely incidental' to the robbery. According to the uncontradicted evidence, including testimony of both the defendant and the victim, it was not.

"The defendant himself testified that he called the cab with the intent to rob the driver. While the cab was in motion he did in fact rob the driver, although he had originally intended to wait until the cab stopped to do so. He then continued to hold the knife to the driver's side and ordered him to drive back to defendant's brother's house for the purpose of finding a place of safety. It is uncontested that this forced movement was for at least 2.8 miles.[6]

"Following the elements to the crime set out in CALJIC [No.] 9.54, as clarified by the language of *Earley*, the uncontested evidence in this case establishes defendant's guilt of the crime charged. In fact, the only contested issue (the specific route taken) are legally irrelevant to the issue of guilt. If a directed verdict of conviction was a constitutional possibility in a criminal case, it would be granted here. The elements of the crime, considered in the order used by CALJIC [No.] 9.54 are established as follows:

"1. Both defendant and victim testified the victim was unlawfully compelled to move because of a reasonable apprehension of harm.

"2. Defendant testified the movement was caused with the specific intent to force the victim to transport the defendant to a temporary place of safety. This 'completed' the robbery. Further, the defendant admitted that he had the specific intent to rob before the movement commenced.

"3. Defendant and victim testified that the movement was without the victim's consent.

---

[6]Gonzales's estimate is 2.8 miles. The victim describes a harrowing eight miles of forced travel.

"4. It is uncontested the movement was for at least 2.8 miles. *Earley* expressly rejects the notion that any movement for a mile or more can ever be 'incidental' to the robbery. (*Earley*[, *supra*, 14 Cal.3d] at 131, fn. 12.)

"5. Defendant and victim testified the victim was 'forced to travel a substantial distance under the threat of imminent injury by a deadly weapon.' *Earley* expressly finds this to meet the 'risk of harm' test. (*Earley*[, *supra*, 14 Cal.3d] at 131.)

"In the previous trial, the jury deadlocked on this charge in the face of similar evidence. The People seek to avoid a similar result here. They represent that at the previous trial defendant argued that the forced drive back to his home was 'merely incidental' to the robbery. He also represent that some jurors later reported they had been persuaded by this argument. As indicated above, this interpretation is completely contrary, as a matter of law, to the express language of *Earley*. . . ."

 The foregoing assessment is amply supported by the record. Gonzales's testimony supports every essential element of the charge. His defense, that he did not intend to rob Hajibille until he arrived at his destination and thus there was no movement with the intent to rob, was unavailing given that Gonzales admitted abandoning this initial plan and instigating the robbery while Hajibille was driving the cab and then forcing him to drive a substantial distance at knife-point during the course of the robbery. The only other argument offered by the defense involved whether the movement substantially increased the risk of physical harm to Hajibille. However, modifying CALJIC No. 9.54 did not affect this element. In fact, the defense never argued the forced movement was not "substantial" or that it was "merely incidental" to the robbery. Accordingly, were there error, it would have been harmless beyond a reasonable doubt.

DISPOSITION

The judgment is affirmed.

Huffman, J., and Froehlich, J., concurred.

Appellant's petition for review by the Supreme Court was denied May 11, 1994. Mosk, J., was of the opinion that the petition should be granted.