Filed 5/30/14  P. v. Richardson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### COURT OF APPEAL, FOURTH APPELLATE DISTRICT

### DIVISION ONE

### STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D063541 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD236404) |
| VINCENT ERIC RICHARDSON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Eugenia A. Eyherabide, Judge.  Affirmed in part, reversed in part, and remanded with directions.

An information was filed charging Vincent Eric Richardson in counts 1 and 2 with burglarizing inhabited buildings (Pen. Code,[1] §§ 459, 460) and in count 3 with being in possession of stolen property (§ 496, subd. (a)).  The information also alleged five prior strikes based upon burglary convictions and one robbery conviction (§§ 667, subds. (b)-(i), 1170.12, 668).  Four prior prison terms were alleged (§§ 667.5, subd. (b), 668), as well as eight probation denial priors (§ 1203, subd. (e)(4)).

---

[1]     All further statutory references are to the Penal Code.

In November 2011 the trial court heard and denied the first of Richardson's three motions to relieve his counsel and appoint new counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118, 124 (*Marsden*).

In late January 2012[2] Richardson pleaded guilty as charged and admitted all allegations as true.

In early March, the trial court heard and denied Richardson's second *Marsden* motion, but nevertheless relieved the public defender's office and appointed the alternate public defender's office to represent him in his motion to withdraw his guilty plea.

In mid-November, the court heard and denied Richardson's third *Marsden* motion. Three days later, on November 16, Richardson moved to represent himself pursuant to *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*). The court denied Richardson's *Faretta* motion on the same date.

On February 19, 2013, the court denied Richardson's motion to withdraw his guilty plea. During the sentencing hearing on the same date, the court struck four strike convictions from 1988 and two of the prior prison term commitments pursuant to *People v. Romero* (1996) 13 Cal.4th 497 (*Romero*). Richardson was sentenced to 18 years in state prison.

Richardson appeals, contending his trial counsel failed to present affirmative evidence on his behalf in support of his motion to withdraw his guilty plea, thereby denying him his right to effective assistance of counsel. Richardson further contends the

---

[2]    All further dates are to calendar year 2012 unless otherwise specified.

court's denial of his request to represent himself was error because his request was unequivocal and made a reasonable time before sentencing, and the trial court had already found him competent to enter a guilty plea. Last, Richardson contends, and the Attorney General acknowledges, that the court erred in calculating the number of days of presentence custody credit to which he is entitled.

We conclude Richardson has failed to demonstrate his counsel provided ineffective assistance. We also conclude the court did not err in denying Richardson's request to represent himself because his request was equivocal and made for the purpose of delay. We further conclude, however, that the court erred in calculating Richardson's presentence custody credits. Thus, we reverse the judgment in part and remand with directions that the court amend the abstract of judgment to reflect the correct number of presentence custody credits.

## FACTUAL BACKGROUND[3]

On August 26, 2011, San Diego Harbor Police Officer Jolene McAllister responded to a report of a burglarized hotel room in the Marriott Hotel on Harbor Drive. The occupant of the hotel room reported a laptop computer, laptop bag, cuff links, and a set of keys were missing. There was a cell phone on the hotel room bed that the occupant had never seen before. Officer McAllister collected the cell phone as evidence.

San Diego Harbor Police Detective Michael Dye retrieved the phone number associated with the cell phone by downloading the SIM card. He called the phone

---

[3] The factual background is derived from the preliminary hearing transcript.

number and reached Richardson's voicemail. Detective Dye ran the phone number through various law enforcement databases and determined Richardson had used the cell phone during previous contacts with law enforcement.

After Richardson's arrest, law enforcement searched local pawn shops for the missing items and discovered Richardson had pawned cuff links at Aztec Jewelers.

Because another guest at the Marriott Hotel had reported a set of cufflinks stolen, Detective Dye sent a photo of the cuff links found at Aztec Jewelers to that guest, who confirmed that they belonged to him.

During the course of the investigation, the security supervisor at the Hyatt Hotel on West Harbor Drive provided Detective Dye with surveillance video of a man who had been seen by cleaning staff on multiple floors of the hotel. Detective Dye prepared a six-pack photo lineup and showed it to a housekeeper who had reported the man's suspicious behavior. The housekeeper identified Richardson as the man she had seen.

On September 6, 2011, Detective Dye responded to the Marriott Hotel regarding a possible sighting of Richardson in the area. When Detective Dye arrived at the location, Richardson had already been detained by hotel security. Richardson had a computer bag and a laptop computer with the business card of Joseph Rodriguez taped to the bottom of the laptop.

DISCUSSION

I. <em>INEFFECTIVE ASSISTANCE OF COUNSEL CLAIM</em>

Richardson contends his counsel provided ineffective assistance during the hearing on his motion to withdraw his guilty plea by failing to introduce any evidence or

4

call any witnesses. Richardson further contends he was prejudiced by his counsel's failure to present affirmative evidence in support of the plea withdrawal motion because, but for counsel's ineffective assistance, the trial court's ruling on the motion to withdraw his plea would have been different. We reject his contentions.

A. *Background*

1. *Guilty plea*

Richardson pleaded guilty as charged and admitted all of the allegations were true. At the time of Richardson's entry of his guilty plea he was represented by Deputy Public Defender Mel Epley. Richardson presented his signed plea of guilty form to the court. The guilty plea form included Richardson's initials in boxes next to statements indicating he understood he was giving up his constitutional rights to a speedy and public jury trial, to confront and cross-examine witnesses, to remain silent and to present evidence on his behalf. The guilty plea form also included Richardson's initials indicating he understood that the maximum punishment as a result of the guilty plea was imprisonment for a term of 79 years to life.

During the guilty plea hearing, the court explained to Richardson that the granting of a *Romero* motion to strike any of his priors would be at the discretion of the sentencing court. Richardson stated he understood that was the plea agreement that had been reached in his case.

The court took Richardson's admissions regarding his prior prison terms. When the court asked Richardson to admit his third prison prior, Richardson said: "Judge, I just like to say I thought that was five years in between that—" Epley interjected: "Your

5

Honor, I think his actual release date on one of them—the other one was five years, but he had a parole violation, and his parole didn't expire. I explained to him that extends a date of the prison commitment." The court acknowledged that was correct and again asked Richardson whether he admitted the third prison prior allegation. Richardson responded affirmatively.

The court then took Richardson's admissions regarding his prior strike convictions. Richardson admitted the first two residential burglary convictions alleged in the complaint, but when asked to admit that the third residential burglary conviction constituted a third strike, Richardson asked, "Just put together as one?" The following exchange occurred:

> "[Epley]: Your Honor, he knows he has four [residential burglaries] on that one case. He's saying that he, you know, thought it was one conviction at the time. I explained to him it was four separate residential burglaries he pled to. Each one constitutes a separate strike.

> "[Richardson]: I don't think they charged it that way initially back then.

> "[Epley]: You want me to show it to you again?

> "[Richardson]: I might remember it.

> "[Epley]: Your Honor, I have a copy of the 1991 probation report with me in court. I have also had the actual report from [19]88, and I previously have shown Mr. Richardson, but I am showing him right now that it indicates that there was [*sic*] four different hotel rooms on four different occasions that he pled guilty to.

> "[Court]: Are you satisfied, Mr. Richardson?

> "[Richardson]: I am."

6

The court found Richardson had knowingly, intelligently, and voluntarily entered his guilty plea and his admissions to four prior prison convictions and his five prior strike convictions.

2. *Oral request to set aside guilty plea and appointment of alternate public defender*

In early March 2012 Richardson requested a *Marsden* hearing with regard to his change of plea hearing. During the hearing, Richardson stated he "had to rescind on the change of plea sentencing" because Epley misled him, did not tell him what he was initialing on the change of plea form, and was not present when he signed the form.

Epley explained to the court he believed Richardson was delusional and paranoid due to his history of drug abuse. Epley went on to say that even if Richardson is not delusional, "[t]hen there is something seriously wrong with his mental ability to comprehend because we had a change of plea form that clearly spells out what he was pleading guilty to."

The court denied Richardson's *Marsden* motion, finding nothing in the record to indicate that Richardson and Epley were embroiled in such an irreconcilable conflict that ineffective representation would likely result.

Thereafter, Richardson stated, "I'll have to rescind on the plea then, ma'am," and "I wish to go pro per at this time, ma'am." The court advised Richardson to bring a motion to withdraw his plea, relieved Epley, and appointed the alternate public defender's office to represent Richardson in his motion to withdraw his guilty plea.

7

3. *Motion to withdraw guilty plea*

In late June 2012 Deputy Alternate Public Defender Albert Bradley filed a motion to withdraw Richardson's guilty plea. In that motion, Bradley argued Richardson's plea was neither knowing nor intelligent and his counsel did not adequately discuss the case and guilty plea with Richardson. The motion also included an offer of proof that Richardson would testify to the following:

1. At the time of his plea he was confused and disoriented.

2. As a result of this condition, he did not fully understand or comprehend the court proceedings.

3. He did not understand the potential sentence and did not understand what he was pleading to.

4. His lawyer failed to explain the case or the plea to him.

The People filed an opposition to Richardson's motion to withdraw the guilty plea. The People argued Richardson failed to meet his burden of demonstrating good cause for withdrawing his guilty plea and failed to show his counsel was ineffective.

4. *Hearing on motion to withdraw guilty plea*

During the February 2013 hearing on his motion to withdraw his guilty plea Richardson was represented by Deputy Alternate Public Defender Shervin Samimi. Samimi asked the court to allow Richardson to withdraw his guilty plea because Richardson was confused and disoriented when he entered his guilty plea and believed his attorney at the time did not adequately explain the consequences of the change of plea. Samimi added that "[Richardson] would explain to this court if the court would like to hear from him, that none of the subsequent information that we received after the

8

change of plea was given to him at the time he was entering his change of plea."  The People submitted the matter on the pleadings and asked the court to take judicial notice of the reporter's transcript of the change of plea and the signed change of plea form.

There was a pause in the proceedings while the court reviewed the paperwork. The court stated it reviewed Richardson's motion to withdraw his plea and acknowledged Richardson's claims that at the time of the plea he was confused and disoriented, that he did not fully understand or comprehend the court, that he did not understand what he was pleading to, and that his lawyer failed to explain the case or the plea to him.  The court stated it also considered and reviewed the People's opposition to Richardson's motion, the change of plea form, and the transcript from the change of plea.

The court then read from the transcript of the change-of-plea hearing, noting she had asked Richardson if he had ample time to go over his change of plea form with his counsel, Epley, if he understood all the contents and the consequences contained in the forms, if he understood the constitutional rights he would be giving up, and if he wished to give up those rights; and Richardson responded in the affirmative to all of the court's questions.  The court noted she explained to Richardson he was pleading to the sheet, there were no deals, and the court would make a decision as to the appropriate sentence, to which Richardson had indicated at the time he understood.

While the court was reading from the transcript, Richardson interjected multiple times, stating various objections including:  "That is not true," "That's another lie," and "Witchcraft."  The court denied Richardson's motion to withdraw his guilty plea, stating:

9

"[T]he Court has, again, reviewed thoroughly the change of plea and the inquiry the Court's made.

"The Court cannot find that there's been any evidence presented, based on this Court's reviewing of the taking of the plea, nor has there been any evidence presented, that Mr. Richardson was confused or disoriented in any way; . . . nor has there been any evidence presented that he did not fully understand or comprehend the Court's proceeding. I went over everything as noted in the transcribed change of plea.

"It's clear to the Court that we went over the potential sentence, which was 79 years to life. That was also initialed by Mr. Richardson on the change of plea . . . and there has been no evidence presented . . . Mr. Epley failed to go over any of these.

"Therefore the motion to withdraw the plea is denied."

B. *Applicable Legal Principles*

A criminal defendant is constitutionally entitled to effective assistance of counsel. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15; *Strickland v. Washington* (1984) 466 U.S. 668, 684-685 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 215.) Where the defendant claims that he or she was denied such assistance, the defendant bears the burden to show that: (1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms (*Strickland, supra,* at p. 688); and (2) counsel's deficient performance was prejudicial, i.e., there is a reasonable probability that, but for counsel's failings, the result would have been more favorable to the defendant. (*Id.* at p. 694; *People v. Jones* (2010) 186 Cal.App.4th 216, 235.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, at p. 694; *In re Neely* (1993) 6 Cal.4th 901, 909.) A defendant "must carry his burden of proving prejudice as a 'demonstrable reality,' not simply speculation

10

as to the effect of the errors or omissions of counsel." (*People v. Williams* (1988) 44 Cal.3d 883, 937.)

In determining whether counsel's performance was deficient, *Strickland* requires that reviewing courts exercise deferential scrutiny and evaluate the reasonableness of counsel's acts or omissions under the circumstances as they stood at the time that counsel acted or failed to act. (*Strickland, supra,* 466 U.S. at pp. 691-694; *People v. Hinton* (2006) 37 Cal.4th 839, 876; *People v. Ledesma*, *supra*, 43 Cal.3d at p. 216.) We will reverse on the ground of inadequate assistance "only if the record on appeal affirmatively discloses that counsel had no rational tactical purpose for his act or omission." (*People v. Fosselman* (1983) 33 Cal.3d 572, 581-582.) A court can deny a claim of ineffective assistance of counsel based solely on the lack of demonstrable prejudice without ever reaching the issue of counsel's performance. (*Strickland*, *supra*, 466 U.S. at p. 697; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126.)

C. *Analysis*

We reject Richardson's claim that his counsel, Samimi, rendered ineffective assistance by "failing to introduce any evidence or call any witnesses" during the hearing on Richardson's motion to withdraw his guilty plea. The record demonstrates Samimi zealously argued on Richardson's behalf during the plea withdrawal hearing. Samimi argued that Richardson was confused and disoriented when he entered his guilty plea and believed his attorney at the time failed to explain the consequences of the plea. Samimi offered to have Richardson testify and explain to the court that he was uninformed at the

11

time he was entering the change of plea. Richardson has presented no evidence that Samimi's representation fell below an objective standard of reasonableness under prevailing professional norms. (See *Strickland*, *supra*, 466 U.S. at p. 688.)

Even assuming Samimi was deficient in his representation, nothing in the record suggests that anything he could or should have done would have altered the court's ruling on the motion to withdraw Richardson's guilty plea. In denying the motion, the court stated it considered and reviewed the entire record, including the change of plea form and the transcript from the change of plea hearing, both of which showed Richardson had indicated he understood the consequences of his plea. At the change-of-plea hearing, Richardson asked the court intelligent questions regarding his prison priors and strike convictions and responded coherently when the court responded to his inquiries. Any possible affirmative evidence offered by Samimi in support of Richardson's claim that he was confused or disoriented would not have resulted in a more favorable outcome because it was clear to the court that Richardson was fully informed of the consequences at the time he entered his plea. Richardson has not carried his burden of proving prejudice as his argument is "simply speculation as to the effect of the errors or omissions of counsel." (*People v. Williams*, *supra*, 44 Cal.3d at p. 937.)

Based on the foregoing record, we conclude Richardson has failed to meet his burden of establishing Samimi's performance was deficient or prejudicial. (See *Strickland*, *supra*, 466 U.S. at p. 687; *People v. Ledesma*, *supra*, 43 Cal.3d at p. 216.)

II. *FARETTA CLAIM*

Richardson also contends the court's denial of his *Faretta* motion was erroneous because his request to represent himself was unequivocal and made a reasonable time before sentencing, and the trial court had already found him competent to enter a guilty plea. Richardson also contends that the court applied the wrong standard in denying his request because, rather than inquiring into whether Richardson understood the disadvantages of proceeding without counsel, the court questioned him about his understanding of certain areas of the law. Richardson further contends the error was reversible per se. We reject Richardson's contentions.

A. *Background*

1. *Richardson's three meritless Marsden motions, his interspersed equivocal requests to represent himself, and numerous continuances of the sentencing hearing*

On November 30, 2011, Richardson was represented by attorney Epley of the public defender's office. On that date, the court heard and denied the *first* of Richardson's three *Marsden* motions for appointment of new counsel. When the court denied his motion, Richardson *immediately asked to represent himself.* The court reminded Richardson of the potential sentence he was facing, which the court had discussed with him during the *Marsden* hearing, and asked him whether he really wanted to represent himself. Richardson responded, "I heard what you said earlier." The court then confirmed the trial call date, and Richardson, indicating ambivalence about his desire to represent himself, responded, "All right."

13

On January 23, 2012, the date set for trial, Richardson pleaded guilty as charged and admitted he had suffered five prior strike convictions and four prior prison convictions. The court set the sentencing hearing for February 27. On that date, the court continued the sentencing hearing to March 7.

At the March 7 rescheduled sentencing hearing, Richardson brought his *second Marsden* motion. During the *Marsden* hearing, following a discussion of Richardson's guilty plea, the court asked Richardson whether he wanted to bring a motion to withdraw his plea. Richardson replied, "*No. My goal is to get another attorney* and go over the process again because this attorney has not been truthful with me." (Italics added.) Following further discussion, the court denied Richardson's *Marsden* motion.

Richardson immediately responded, "I'll have to rescind on the plea then." Confused by Richardson's earlier indication he did not want to withdraw his guilty plea, the court said, "I'm not sure Mr. Richardson what you wish to do." Immediately thereafter, as he had done following the denial of his first *Marsden* motion on November 30, Richardson replied that *he wished to represent himself*.

The court then reminded Richardson he had just told the court he did not want to withdraw his plea. Following further discussion, the court explained to Richardson that a *Marsden* motion and a motion to withdraw a plea were "two different things." The court asked Richardson whether he was asking for a continuance of the sentencing hearing in order to bring a motion to withdraw his plea. Richardson replied, "Yes, Your Honor." The court granted Richardson's request for a continuance to allow him to file a motion to withdraw his plea. Finding that Richardson's counsel, Epley, had a potential conflict of

14

interest, the court relieved him and appointed the Alternate Public Defender's Office to represent Richardson and bring the motion on his behalf. The court then granted a second continuance of the sentencing hearing—to April 9—indicating it would hear Richardson's motion to withdraw his plea at that time.

Thereafter, the court granted five continuances—ultimately to November 13—of the combined sentencing hearing and hearing on Richardson's motion to withdraw his plea. Richardson's motion was filed on June 29.

On November 13, the date set for both the hearing on his motion to withdraw his guilty plea and sentencing, Richardson orally brought his *third Marsden* motion. The court heard and denied the motion. Following a discussion of whether Richardson wished to represent himself, Richardson expressed ambivalence by stating, "I need time to think about these things." For a sixth time, the court continued both the sentencing hearing and the hearing on Richardson's motion to withdraw his plea—this time to November 16.

2. *Denial of Richardson's November 16 Faretta motion and further continuances of the sentencing hearing*

On November 16, the date set for both the hearing on his motion to withdraw his plea and his sentencing, and only three days after the court denied Richardson's third meritless *Marsden* motion on November 13—Richardson brought his *Faretta* motion to represent himself. Richardson filled out, signed, and presented to the court his *Faretta/Lopez* waiver form entitled "Acknowledgement Regarding Self-Representation and Waiver of Right to Counsel." The hearing on his *Faretta* motion was held on the

15

same day. The court reviewed the form with Richardson and asked whether he had read, initialed, and signed it.  Richardson responded affirmatively.  The court then asked Richardson a series of questions he was unable to answer, including what the difference was between the burden of proof at a preliminary hearing versus at a felony jury trial, and whether Richardson knew the burden of proof in a motion to withdraw a plea.  The following exchange then took place between the court and Richardson, at the end of which the court denied Richardson's *Faretta* motion:

> "[Court]:  All right, Mr. Richardson, I have—the Court, having made inquiry of you, in terms of these very important areas of the law— you understand, Mr. Richardson, that the judge can't help you in this. They can't give you any advice or tell you what the burden of proof is or what motion's due or anything like that.

> "[Richardson]:  I can get—

> "[Court]:  All right.  Mr. Richardson, at least at this time I'm . . . very concerned because you don't know what the burden of proof is particularly for a jury trial, nor the pending motion before me.  [S]o that's concerning to the Court.

> "[Richardson]:  That is not something that can't be learned.

> "[Court]:  Well, Mr. Richardson, it's something I need to know whether you understand it now.  So I am concerned at this time, the court is greatly concerned, especially in light of our other hearings and our discussions here in court, whether, at least at this time, you have an understanding of the charges and nature of the proceedings to represent yourself.

> "So I am going to deny your request at this time, and Mr. Bradley will be your attorney."

After denying Richardson's *Faretta* motion, and at the request of Richardson's counsel, the court continued for the seventh time both the sentencing hearing and the

16

hearing on Richardson's motion to withdraw his guilty plea—this time to January 16, 2013. On that date, by stipulation, the court continued the hearings for the eighth time—to February 19, 2013.

      3. *Denial of Richardson's motion to withdraw his guilty plea, and sentencing*

At the hearing on February 19, 2013—almost one year after the original February 27, 2012 sentencing date—the court first denied a peremptory challenge to the court and a motion to change venue[4] that Richardson had prepared but had just handed to his counsel, who told the court he had not reviewed them and did not support them. Following arguments by both counsel, the court denied Richardson's motion to withdraw his guilty plea and then sentenced him.

      B. *Applicable Legal Principles*

Under the Sixth Amendment, defendants have both the right to be represented by counsel at all critical stages of a criminal prosecution, and the right to represent themselves. (*Faretta, supra,* 422 U.S. at p. 819; *People v. Koontz* (2002) 27 Cal.4th 1041, 1069; *People v. Marshall* (1997) 15 Cal.4th 1, 20 (*Marshall*).) Generally, if a defendant's request for self-representation is unequivocally asserted within a reasonable time prior to commencement of trial, and if the assertion is voluntarily made with an appreciation of the risks involved, the trial court has no discretion to deny it. (*Faretta*, at pp. 835-836; *People v. Windham* (1977) 19 Cal.3d 121, 128.) However, "[a] request

---

4     Richardson does not challenge these rulings on appeal.

made after this time period is left to the discretion of the trial court." (*People v. Scott* (2001) 91 Cal.App.4th 1197, 1203.)

In determining whether a self-representation request was unequivocal, a reviewing court should evaluate the defendant's words and conduct to decide whether the defendant truly desired to give up counsel and represent himself or herself. (*Marshall, supra,* 15 Cal.4th at pp. 25-26.) Stating that *Faretta* "suggests that an insincere request or one made under the cloud of emotion may be denied" (*Marshall, supra,* at p. 21), the California Supreme Court noted that "[s]everal courts ha[d] declared that a motion made out of a temporary whim, or out of annoyance or frustration, is not unequivocal—even if the defendant has said he or she seeks self-representation." (*Ibid.*) The *Marshall* court also noted that "[o]ther courts ha[d] declared that a timely motion for self-representation made for the purpose of delay or to disrupt the orderly administration of justice need not be granted." (*Id.* at p. 22.) Thus, a *Faretta* motion "made in passing anger or frustration, an ambivalent motion, or one made for the purpose of delay or to frustrate the orderly administration of justice" is not unequivocal and may be denied. (*Marshall,* at p. 23.)

The California Supreme Court has also explained that "[e]quivocation of the right of self-representation may occur where the defendant tries to manipulate the proceedings by switching between requests for counsel and for self-representation." (*People v. Lewis and Oliver* (2006) 39 Cal.4th 970, 1002.) The courts in California have coined the phrase "the *Faretta* game" to refer to a defendant's manipulation of the judicial process in a criminal prosecution to delay or disrupt the proceedings by "juggling his *Faretta* rights with his right to counsel interspersed with *Marsden* motions." (*People v. Williams* (1990)

18

220 Cal.App.3d 1165, 1170; see also *Marshall, supra,* 15 Cal.4th at p. 22 [citing with approval the reference in *Williams* to the "*Faretta* game"].)

Thus, a defendant's *Faretta* motion made immediately after the denial of his or her *Marsden* motion may be seen as equivocal if the circumstances show the defendant's true desire was actually different representation and not self-representation. (See *People v. Valdez* (2004) 32 Cal.4th 73, 99 [defendant's single reference to right of self-representation, made immediately following denial of *Marsden* motion, supports conclusion that defendant did not make an unequivocal *Faretta* motion]; *People v. Scott, supra,* 91 Cal.App.4th at pp. 1203-1206 [*Faretta* motion was equivocal where defendant made the motion immediately after the trial court denied his *Marsden* motion and defendant's comments suggested he made the motion because the court would not replace his attorney with a different public defender].)

1. *Standard of review*

"In determining on appeal whether the defendant invoked the right to self-representation, we examine the entire record de novo." (*People v. Dent* (2003) 30 Cal.4th 213, 218.)

C. *Analysis*

Richardson claims the court's inquiry regarding his knowledge of certain legal concepts during the November 16 hearing on his written *Faretta* motion was irrelevant and demonstrates the court abused its discretion in denying that motion. The Attorney General acknowledges "the court's stated reason for denying [Richardson's] *Faretta* motion was improper," but argues the court properly denied the motion because

19

Richardson's request to represent himself was "equivocal and only done to cause further obstruction in the protracted proceedings below after his third *Marsden* motion was denied, or to create an issue on appeal."

On appeal we review the legal correctness of the court's ruling, not the court's rationale. (*People v. Zapien* (1993) 4 Cal.4th 929, 976.) Even if the trial court denied the defendant's *Faretta* self-representation request for an improper reason, we will affirm the court's ruling if the record as a whole establishes the request would be denied properly on other grounds. (*People v. Dent*, *supra*, 30 Cal.4th at p. 218.)

Here, viewing Richardson's *Faretta* motion in light of his words and conduct—including his other self-representation requests—and also in light of the court's rulings on his three meritless *Marsden* motions, we conclude the court did not err in denying Richardson's *Faretta* motion because his request to represent himself was equivocal and made-as a result of frustration and for the purpose of delaying and disrupting the proceedings. Richardson's various oral requests to represent himself occurred either immediately or very soon after his *Marsden* motions were denied, indicating frustration with the court's rulings. Specifically, the record shows Richardson made his first oral self-representation request *immediately* after the court denied his first *Marsden* motion on November 30, 2011. The equivocal nature of that request is shown by the fact that, after the court denied the motion, the court reminded Richardson of the potential sentence he was facing, and Richardson responded by saying "All right" after the court confirmed the trial date.

20

Richardson made another oral request for self-representation almost immediately after the court denied his second *Marsden* motion on March 7, 2012. The equivocal nature of that request is shown by the fact that, during the hearing on that motion, Richardson told the court his goal was "to get another attorney."

When the court denied Richardson's third *Marsden* motion about eight months later on November 13, the court discussed with Richardson whether he wished to represent himself, and Richardson expressed ambivalence and a desire to further delay and disrupt the proceedings by stating he needed time to "think about these things."

Richardson filed his written *Faretta* motion on November 16, only three days after his third and final meritless *Marsden* motion was denied. It appears this request for self-representation was also made out of frustration and as a means to further delay and disrupt the proceedings, rather than out of a sincere desire to represent himself, because it led to another postponement of the sentencing hearing, which was supposed to have occurred on that date.

Richardson's determined efforts to delay his sentencing did not end with the denial of his *Faretta* motion on November 16. The sentencing hearing eventually took place on February 19, 2013, almost one year after the original February 27, 2012 sentencing date. However, before the court could conduct the sentencing, Richardson unsuccessfully brought both a peremptory challenge to the court and a motion to change venue that his counsel had not reviewed and did not support.

We conclude Richardson's foregoing actions and repeated expressions of dissatisfaction with his defense counsels show he did not make an unequivocal request to

21

represent himself that would require the granting of his *Faretta* motion. (See *Marshall*, *supra*, 15 Cal.4th at pp. 25-26.) Richardson's conduct supports a finding that he brought his November 16 *Faretta* motion out of frustration with the court's denials of his three *Marsden* motions, and he was playing the "*Faretta* game" for the purpose of delaying and disrupting the proceedings by "juggling his *Faretta* rights with his right to counsel interspersed with *Marsden* motions." (*Williams*, *supra*, 220 Cal.App.3d at p. 1170; see also *People v. Lewis and Oliver*, *supra*, 39 Cal.4th at p. 1002 [switching between requests for counsel and for self-representation may indicate equivocation and manipulation of the proceedings].) Accordingly, we conclude the court did not err in denying Richardson's request for self-representation.

### III. *PRESENTENCE CUSTODY CREDITS CLAIM*

Last, Richardson contends the court erred in calculating the number of days of presentence custody credit to which he is entitled. The abstract of judgment reflects an award of 261 days of presentence custody credit. However, Richardson argues, and the People agree, that the correct number of days of presentence custody credit should be 799 days. We agree the court erred in calculating the number of days of presentence custody credit to which Richardson is entitled. He is entitled to 799 days of presentence custody credit.

## DISPOSITION

The judgment is reversed to the extent it awarded Richardson only 261 days of presentence custody credit. The matter is remanded with directions that the trial court award Richardson 799 days of presentence custody credit, amend the abstract of judgment to reflect that change, and forward a copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.

NARES, Acting P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.

23